Vanessa R. Waldref
United States Attorney
Eastern District of Washington
Thomas J. Hanlon
Assistant United States Attorney
Richard C. Burson
Assistant United States Attorney
402 E. Yakima Ave., Suite 210
Yakima, WA 98901
Telephone: (509) 454-4425

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| UNITED STATES OF AMERICA, | ) NO: 1:20-CR-2024-SAB |
|---|---|
| Plaintiff, | ) |
| vs. | ) PLAINTIFF'S SENTENCING MEMORANDUM |
| CLIFTON FRANK PETER, | ) |
| Defendant. | ) |

Plaintiff, United States of America, by and through Vanessa R. Waldref, United States Attorney for the Eastern District of Washington, and Thomas J. Hanlon and Richard C. Burson, Assistant United States Attorneys, submits the following sentencing memorandum:

I.

SENTENCING CALCULATIONS

The United States agrees with the calculations contained in the Presentence Investigation Report ("PSIR"). The Defendant pled guilty to three counts of

Government's Sentencing Memorandum    1

second-degree murder.[1] (ECF No. 41). These offenses carry a maximum statutory penalty of life imprisonment. 18 U.S.C. § 1111.

II.

GOVERNMENT'S OBJECTION TO PSIR

The Government has filed no objections to the PSIR.

III.

UPWARD VARIANCE/SENTENCING FACTORS UNDER 18 U.S.C. §3553(a)

Since "*Booker*, the scheme of downward and upward departures has been replaced by the requirement that judges impose a reasonable sentence." *United States v. Tankersley*, 537 F.3d 1100, 1113 (9th Cir. 2008). The Guidelines are the starting point and the initial benchmark for the sentencing process. *Kimbrough v. United States*, 128 S. Ct. 558 (2007). "[A] sentence outside the Guidelines carries no presumption of unreasonableness." *Irizarry v. United States*, 128 S. Ct. 2198, 2202 (2008). "Any expectation . . . that a criminal defendant will receive a sentence within the presumptively applicable Guideline range did not survive . . . *United States v. Booker*, which invalidated mandatory features of the Guidelines." *Id.* The Court has broad power to make a reasoned decision on the individualized facts before it. *Rita v. United States*, 127 S. Ct. 2456, 2468 (2007). The Court "take[s] into account the totality of the circumstances" to determine whether a

---

[1] An upward departure may be warranted in second-degree murder cases involving heinous, cruel, or brutal conduct. U.S.S.G. § 2A1.2, comment n.1.

sentence is reasonable. *Gall v. United States*, 128 S. Ct. 586, 597 (2007). A district court contemplating a non-Guideline sentence must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance. *Peugh v. United States*, 133 S. Ct. 2083 (2013)(citations omitted). A district court may vary upward based on factors already incorporated into the Guideline calculations. *United States v. Christensen*, 732 F.3d 1094, 1101 (9th Cir. 2013). District courts are in the best position to determine whether particular second-degree murder cases are unusually brutal or cruel. *United States v. Roston*, 168 F.3d 377, 379 (9th Cir. 1999).

In determining the appropriate sentence, this Court is required to consider the factors as set forth in 18 U.S.C. § 3553(a).

1. <u>The nature and circumstances of the offense and the history and characteristics of Defendant.</u>

Victims O.V.M. and I.S.G. had been a couple for more than 13 years. Together they had four young children. Both O.V.M. and I.S.G. worked in various orchards to provide for their children. On June 1, 2019, O.V.M. and I.S.G. completed work, went home, and had dinner with their children. After dinner, O.V.M. called his mother and they spoke for approximately thirty minutes. After the phone call, O.V.M. and I.S.G. went out so that I.S.G. could practice driving. O.V.M. was teaching I.S.G. how to drive a car. I.S.G. and O.V.M. never returned home. Due to the fact that O.V.M. and I.S.G. were responsible, loving parents and

failed to return home, a family member called the police to report that O.V.M. and I.S.G. were missing.

Victim J.L.G. was also a hard-working individual. On June 1, 2019, J.L.G. was driving home to his family. J.L.G. never made it home.

On June 1, 2019, while the victims were at work, the Defendant was at home drinking alcohol and playing video games. According to the Defendant's mother, the Defendant became upset playing the video games and began yelling. According to the Defendant's uncle, the Defendant was wearing a headset and playing video games. The Defendant was "getting extremely upset and was yelling." Due to the Defendant's behavior, his uncle departed from the residence.

The Defendant's mother knew the Defendant was playing video games and was drinking. The Defendant's mother decided to leave the house. The Defendant's mother inferred to law enforcement that this was not uncommon behavior. The Defendant's mother advised that in the past, she would simply leave the house for 4-5 hours and the Defendant would typically be asleep when she returned. However, on June 1, 2019, the Defendant's mother was attacked as she attempted to flee her home. The Defendant picked up a hatchet and broke a taillight and window of her vehicle. The Defendant's mother left her keys in the ignition and exited her vehicle. The Defendant picked up his mother and "body

slammed" her on the ground. The Defendant walked back into his home. The Defendant's mother ran into a nearby orchard to hide from her son.

The Defendant, highly intoxicated, decided to go for a drive in his mother's vehicle. At the same time, victim J.L.G. was driving by the Defendant's residence on his way home. Based on observations at the crime scene, it appeared that the Defendant had backed out of the driveway at a high rate of speed. At the same time, victim J.L.G swerved off the road to likely avoid an accident. The Defendant exited his truck and murdered J.L.G. with a shotgun.

The Defendant entered his mother's truck and proceeded northbound on Yakima Street. At the same time, victims O.V.M. and I.S.G. were also traveling northbound on Yakima Street. The Defendant slammed into the back of the victim vehicle and pushed the car off the road. The victim vehicle was destroyed.[2] The Defendant exited his vehicle with a shotgun. The Defendant murdered I.S.G. as she sat in the driver seat.

Two children were playing in nearby area and were throwing rocks in the canal. The children heard the collision and ran over to see what had happened. According to the children, they saw a male exit a vehicle with a gun. The children stated they saw another man get out of the other vehicle. The children advised

---

[2] Pursuant to 5K2.5, property damage is a permissible basis for an upward departure. "There is nothing in the second degree murder Guideline to suggest that damage to property is subsumed within a conviction for that crime." *United States v. Larson*, 78 Fed Appx. 650, 658-659 (10th Cir. 2003)(unpublished).

Government's Sentencing Memorandum        5

they saw the second man put his hands up in the air and say "no, no."[3]  The children advised that they saw the first male shoot the second male who had his hands in the air.  The children advised that they ran home.  The children advised that the male with the gun was following them.

    Police spoke to T.S., an adult male.  T.S. advised that he heard gunshots and saw the two children approaching him.  T.S. advised he saw a male behind them who was carrying what appeared to be a shotgun. T.S. advised that he grabbed his pistol and went outside to protect the children.  T.S. stated the man with the shotgun ran past his house and jumped a fence.  T.S. observed that the male had disposed of the shotgun.

    Another adult witness, M.W., advised that she saw a man walk by her house with a long gun.  She observed that the male was wearing shorts and did not have shoes.  She advised that she saw the male stop at a car and then walk down to a trailer on Columbia Street.

    The shotgun was found at the southeast corner of 4th Street and Columbia Street.

    The Defendant's aunt, R.T., resided on Columbia Street.  R.T. advised law enforcement that the Defendant had come over to her trailer.  R.T. advised the

---

[3] As to O.V.M., Forensic Pathologist Jeffrey Reynolds documented in his report "left wrist and palmar hand disrupted by gunshot damage with wrist fractured and dislocated. . ."

Defendant stated that "he had done something bad." R.T. advised that she did not allow the Defendant to enter her trailer. R.T. advised the Defendant walked away.

The Defendant was subsequently found nearby and apprehended. The Defendant was wearing shorts and did not have shoes. The Defendant appeared to be intoxicated.

2. <u>The need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and to provide just punishment.</u>

The current offense is serious. The Defendant's criminal history and conduct here demonstrates that he has no respect for the law. The Defendant while highly intoxicated[4] decided to steal his mother's vehicle and go for a drive. Without mercy, the Defendant shot and killed three innocent people because they were in the wrong place at the wrong time. The government submits that a sentence of 50 years imprisonment will provide just punishment.

3. <u>The need for the sentence imposed to afford adequate deterrence to criminal conduct.</u>

In 2011, the Defendant was convicted of first-degree robbery with a deadly weapon and theft of a motor vehicle. He was sentenced to 36 months imprisonment. In 2013, the Defendant was convicted of second-degree unlawful possession of a firearm. The Defendant was sentenced to 9 months imprisonment.

---

[4] If the evidence supports the conclusion that a Defendant's drunken driving significantly endangered the public safety, § 5K2.14 is a permissible ground for an upward departure. *United States v. Larson*, 78 Fed. Appx. 650, 659 (10th Cir. 2003)(unpublished).

In 2016, the Defendant was convicted of second-degree criminal trespass. The Defendant was a passenger in a vehicle. At the time of his arrest, multiple firearms were found in the vehicle.

These prior convictions did not deter the Defendant from engaging in future crimes. Rather, the Defendant's acceptance and use of violence has dramatically escalated. These prior sentences did not deter the Defendant from either possessing firearms or engaging in violent acts.

4. <u>The need for the sentence imposed to protect the public from further crimes of Defendant.</u>

The Defendant is a danger to community. The Defendant has repeatedly victimized members of the community. Here, the Defendant murdered three unarmed people for no reason. The government submits that a sentence of 50 years imprisonment will adequately protect the public.

5. <u>The need for the sentence imposed to provide Defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.</u>

It appears the Defendant is in need of educational training.

IV.

GOVERNMENT'S SENTENCING RECOMMENDATION

The government recommends the Court impose a sentence of 50 years imprisonment. In 2011, police responded to the Defendant's residence concerning an alleged domestic violence situation. The Defendant allegedly assaulted his

mother and armed himself with a rifle.  The Defendant left the house and attempted to steal a tractor.  The Defendant threatened to shoot the victim.  The Defendant then pointed the rifle at the victim.  The Defendant was arrested and found in possession of a rifle.  On August 16, 2011, the Defendant was sentenced to 36 months imprisonment.  Less than two years later, the Defendant was found in possession of another rifle.  On December 2, 2013, the Defendant was sentenced to 9 months imprisonment.  Seven months later, the Defendant was again found in a vehicle.  Multiple firearms were found in the vehicle.

  The Defendant argues that tragedies in his life caused him to abuse alcohol.  The government recognizes that the deaths of family members is certainly tragic.  However, the Defendant was ingesting alcohol, marijuana, and cocaine prior to such tragedies.

  The government submits that an upward departure is necessary in the instant case.  The Defendant is a troubled, violent man with a history of torturing animals, assaulting others, ingesting controlled substances, and possessing firearms.  Here, the offense conduct was particularly gruesome.  The Defendant shot and murdered three people.  All of the victims were unarmed.  Due to the Defendant's deliberate actions, the lives of the victim family members will never be the same.  The Defendant knew that he had a problem with alcohol.  The Defendant knew that he was prohibited from possessing firearms.  Yet, the Defendant consumed an

excessive amount of alcohol, armed himself with a firearm, and murdered three people. The Defendant's conduct involved not only infliction of pain towards the victims, but extreme pain and distress for the family, children, and friends of the victims.[5] The bottom line is that the Defendant is an extreme danger to his own family as well as the public. These facts alone (offense conduct and danger to the public) justify the government's recommendation for an above-Guidelines sentences. Lastly, the government recommends restitution in the amount of $86,170.00 be ordered.

    Respectfully submitted this 30th day of November 2021.

                                Vanessa R. Waldref
                                United States Attorney
                                s\ Thomas J. Hanlon
                                THOMAS J. HANLON
                                Assistant United States Attorney

---

[5] *See United States v. Hanson*, 264 F.3d 988, 999 (10th Cir. 2001)(discussing 5K2.8 extreme conduct "the defendant's conduct may involve the "inflict[ion] [of] suffering . . . pain or distress," not only on the victim but on the victim's family and friends and members of the community in which the crime is committed; it may be "cruel" in that sense.

I hereby certify that on November 30, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF which will send notification of such filing to the following: John B. McEntire, IV.

                                          s\ Thomas J. Hanlon
                                          THOMAS J. HANLON
                                          Assistant United States Attorney
                                          United States Attorney's Office
                                          402 E. Yakima Ave., Suite 210
                                          Yakima, WA   98901
                                          (509) 454-4425